UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **THIRD MILLENNIUM MATERIALS, LLC,** *et al.*, | |
| Plaintiffs, | Case No. 2:19-cv-169 |
| | JUDGE GEORGE C. SMITH |
| v. | Magistrate Judge Deavers |
| **WILBURN L. BAKER,** *et al.*, | |
| Defendants. | |

### OPINION AND ORDER

This matter is before the Court upon Defendants Aerospace Business Development Associates, Inc., Couch Management Enterprises, LLC, GDC Industries, LLC, Michael D. Braydich, David G. Couch, Harry Couch, Fawn E. Couch, and Louis A. Luedtke's Motion to Dismiss (Doc. 19); Defendants Munro & Associates, Inc. and Sandy Munro's Motion to Dismiss (Doc. 20); Defendant Roger Scherer's Motion to Dismiss (Doc. 27); and Defendant Wilburn Baker's Motions to Dismiss (Docs. 31 and 32).  Plaintiff filed Responses (Docs. 33 and 34) and Defendants have replied (Docs. 37–41).  The Motions are ripe for review.  For the following reasons, Defendants' Motions to Dismiss are **GRANTED**.

### I.     BACKGROUND

Plaintiffs Third Millennium Materials, LLC ("TMM") and Third Millennium Materials Management, LLC ("TMMM") (collectively, "Plaintiffs" or "Third Millennium") are both Ohio limited liability companies with their principal place of business at 4677 Winterset Drive, Columbus, Ohio 43220.  TMMM was organized as an Ohio limited liability company on March

7, 2005, with two initial members, Jason Shugart and Roger Scherer[1], each of whom held 50% of the Membership interests and each of whom were the initial Managers, each with 50% voting interests. (*Id.* ¶ 38).

TMM was organized as an Ohio limited liability company on December 27, 2004, to research and commercialize the technology of covetics.[2] On January 27, 2007, the Members of TMM adopted and executed the Third Millennium Operating Agreement. (Doc. 10, Am. Compl. ¶ 31; Operating Agreement attached as Ex. A to Doc. 1). The Third Millennium Operating Agreement imposes noncompetition, non-use and nondisclosure obligations upon each Member (Roger Scherer, Louis Luedtke, Harry Couch, Michael Braydich and CME), including section, 7.6 Company Property, section 8.2, Non-Use and Non-Disclosure of Confidential Information, Section 8.6, Non-Competition, Section 8.7, Reasonableness of Restrictions and 8.6, Enforceability of Restrictions. (*Id.* ¶¶ 34-35). In 2009, Louis Luedtke was hired as CEO and Harry Couch as Chief Science Office of Third Millennium. Third Millennium was renting a building from Couch Management Enterprise, an LLC owned by David Couch. Third Millennium began working with Munro & Associates in 2010, and Aerospace Business Development Associates, Inc. in 2013.

Third Millennium developed and owns intellectual property related to the process to create covetics as well as the unique compositions of matter described by the term covetics, including but not limited to several composition of matter Patents issued by the United States Patent and Trademark Office and a comprehensive array of International Patents relating to the new, novel compositions of matter, unique chemical bonds and resulting properties of covetic materials, as

---

[1] Defendant Stephanie Scherer was originally named as a Defendant but was dismissed with prejudice on July 10, 2019. (Docs. 35, 36).
[2] "Covetics is a term coined by TMM in 2009 for the unique and proprietary process to chemically bond carbon atoms to metal atoms, resulting in incredibly strong chemical bonds, creating an array of numerous, novel compounds unknown in the field of chemistry." (Doc. 10, Am. Compl. ¶ 29).

well as pending patents, trademarks, copyrights, trade secrets and confidential information (collectively referred to as "Third Millennium's Intellectual Property"). (Doc. 10, Am. Compl. ¶ 41).

Seven of the Defendants are former Third Millennium executives and consultants subject to ongoing noncompetition, non-use and nondisclosure obligations.[3] Five of the Defendants are Third Millennium Members, whose Operating Agreement imposes comprehensive and continuing noncompetition, non-use and nondisclosure obligations, binding upon them and four of the other Defendants as Affiliates (as defined in the Third Millennium Operating Agreement) of these Third Millennium Members. The remaining Defendant, Wilburn Baker, is an Ohio attorney for several of the Defendants and their enterprise, GDCI.

Plaintiffs allege that all of the Defendants "have engaged in a multi-year, ongoing, coordinated, and arranged conspiracy to keep their activities and intentions secret; to stonewall all inquiries from the TMMM Managers; to refuse to cooperate in the investigation conducted by one

---

[3] On January 27, 2007, Roger Scherer executed the following Third Millennium agreements: a. Employment Agreement; b. Operating Agreement of TMM; c. Contribution and Subscription Agreement; d. Bill of Sale; e. Patent and Invention Assignment; f. Agreement Regarding Proprietary Information, Inventions and Works of Authorship; and g. Agreement to Preserve Corporate Opportunity. (Doc. 10, Am. Compl. ¶¶ 32–33). These obligations were binding on each Member of TMM, including: Roger Scherer, Luedtke, Harry Couch, Braydich, and CME, as well as their respective Affiliates. (*Id.* ¶ 35). Luedtke was the CEO of Third Millennium from May 2009 through September 2014. On December 31, 2009, Luedtke entered into an Employment Agreement which imposes comprehensive noncompetition, non-use and nondisclosure obligations. (*Id.* ¶¶ 42–44). Harry Couch served as TMM's Chief Science Officer from May 2009 through September 2014. Also on December 31, 2009, Harry Couch entered into an Employment Agreement with Third Millennium which imposes the same non-compete restrictions as the aforementioned. (*Id.* ¶¶ 45–47). On October 28, 2010, the Munro Defendants entered into a Strategic Alliance Agreement and Right of First Refusal with TMM. This agreement obligated the Munro Defendants to introduce TMM to potential licensees and to provide consulting services to the prospective licensees; further, any information that TMM supplied to Munro was confidential. (*Id.* ¶ 48). On June 13, 2013, ABDA, through Braydich, entered into the Aerospace Business Development Associates, Inc. (ABDA) Domestic Marketing Services Agreement (DMSA) with TMM. This agreement required ABDA to: treat all information submitted to it as the property as TMM; not disclose such information to third parties; and not enter into any similar agreement with a direct competitor of TMM during the term of the agreement. (*Id.* ¶ 50). On July 1, 2015, Braydich became a member of TMM and became subject to the TMM Operating Agreement Obligations, outlined above. (*Id.* ¶ 53).

3

of the TMMM Managers; and to refuse to provide the TMMM Managers with instruments purporting to obligate TMM and benefitting the enterprise, GDCI, including a Confidential Settlement Agreement and Release and IP License Agreement." (Doc. 10, Am. Compl. ¶ 25).

In Count I of the Amended Complaint, Plaintiffs allege that Defendants Baker, Luedtke, Harry Couch, Braydich, Munro, Roger Scherer, CME, David and Fawn Couch (collectively, the "Defendants" or "RICO Defendants"), each associated with GDCI, a RICO Enterprise pursuant to 18 U.S.C. § 1961(4), whose activities affect interstate commerce, violated § 1962(c) by committing the following predicate acts:

> at least two instances of Interstate Transportation of Stolen Property, in violation of 18 U.S.C. 2314; at least one instance of Sale or Receipt of Stolen Goods which have crossed State Lines in violation of 18 U.S 2315; Use of the Interstate Wires to Execute a Scheme or Artifice to Defraud TMM on January 21, 2015, February 3, 2015, March 2, 2015, March 6, 2015 and March 10, 2015, all in violation of 18 U.S.C. 1343, each constituting Wire Fraud; at least four instances of Extortion of TMM and its members in violation of the Hobbs Act, 18 U.S.C. 1952(b)(2); at least eight instances of extortion of TMM and its members in violation of Ohio Revised Code sections 2905.(A)(4) and/or 2905.11(A)(5); at least four instances of Using the Interstate Wires to Execute a Scheme to Defraud the US Department of Energy, the US Naval Academy, Emerson Climate Technologies and Strategic Marketing Innovations, and numerous other similar predicate acts and victims not alleged herein, all in violation of 18 U.S.C. section 1343; at least four instances of Use of the US Mail to Execute a Scheme or Artifice to Defraud, in violation of 18 U.S.C. 1343; and numerous and continuing instances of possessing, utilizing, misappropriating or communicating the trade secrets of TMM after May 11, 2016, constituting multiple and continuing violations of 18 U.S.C. 1832, Theft or Misappropriation of Trade Secrets.

(Doc. 10, Am. Compl. ¶ 114).

Plaintiffs assert that the RICO Defendants engaged in three schemes: 1) stole Plaintiff's covetic inventory and transferred it across state lines; 2) fraudulently obtained Plaintiff's laboratory, manufacturing equipment, covetic inventory and the exclusive rights to all of its IP; and 3) fraudulently marketed Plaintiffs' IP to the US Government and customers and potential customers of the enterprise to obtain research grants and licensing fees for their enterprise. With respect to the first scheme, Plaintiffs describe:

> On February 13, 2015, GDCI contracted in writing to transport 20 pounds of aluminum covetic belonging to TMM to Freeport McMoRan in Elizabeth NJ for $7,200, with instructions to extrude such aluminum covetic materials into wire. As a result of this transaction, the aluminum covetic material belonging to TMM, which had a value of at least $5,000, crossed a state line after having been stolen, unlawfully converted or taken, with CME, Baker, Luedtke, Harry Couch, Braydich, Munro, and David and Fawn Couch knowing the same to have been stolen, unlawfully converted or taken by GDCI, in violation of 18 U.S.C. section 2314, Interstate Transportation of Stolen Property.

(Doc. 10, Am. Compl. ¶ 63).

> On or about March 3, 2015, was the scheduled date of delivery by Freeport McMoRan of the stolen twenty pounds of TMM Aluminum Covetics to Munro Associates in Michigan. Munro and Munro Associates received and possessed these goods, wares or merchandise with a value in excess of $5,000 belonging to TMM which crossed a state line after having been stolen, unlawfully converted or taken, with Munro knowing the same to have been stolen, unlawfully converted or taken, in violation of 18 U.S.C. section 2315, Receipt of Stolen Goods.

(Doc. 10, Am. Compl. ¶ 70).

> With respect to the third scheme, Plaintiffs allege:

> Luedtke, acting on behalf of the Enterprise as either the "CEO" or "Managing Partner" of GDCI, sent at least 4 interstate email communications between May of 2015 and June 30 of 2016 in which he knowingly falsely stated that GDCI had the exclusive rights to the TMM intellectual property and that GDCI desired to work with the recipients on potential covetic projects utilizing such intellectual property. Specifically, Defendant Luedtke, who was located in Dayton, Ohio sent such emails to: (i) David Forrest of the U.S. Department of Energy on May 12, 2015; (ii) Carrie Davis of the U.S. Naval Academy on August 17, 2015; (iii) Claudia Andre de Silva of Emerson Climate Technologies on March 29, 2016; and Drew Rosenberg of Strategic Marketing Innovations on June 30, 2016. Each of the recipients of these emails was located outside of the State of Ohio. Each of these email communications was knowingly sent by Defendant Luedtke with the specific intent to execute a scheme to defraud the recipient into believing that GDCI had the exclusive rights to TMM's intellectual property, including TMM's trade secrets, with the specific intent to obtain money or property from the recipient based upon the knowingly false representation that GDCI had the exclusive rights to TMM's Intellectual Property, including TMM's trade secrets.

(Doc. 10, Am. Compl. ¶ 90).

Plaintiffs allege that the aforementioned schemes constitute the predicate acts of racketeering, violating, *inter alia*, 18 U.S.C. §§ 1341, 1343, 2314, 2315 and 1832; as well as

5

extortion under Ohio law. Plaintiffs specifically reference email communications among and between Defendants to support their allegations. Defendants do not dispute that they formed GDCI on February 6, 2015, after resigning from Third Millennium. Defendants then brought suit against Plaintiffs in Montgomery County Court of Common Pleas for breach of contract, fraud, unjust enrichment, and unpaid compensation. The case was settled out of court. Plaintiffs then filed suit against Defendants in August 2016 in the Franklin County Court of Common Pleas and voluntarily dismissed the case in September 2018.

Plaintiffs assert twenty-four claims against Defendants in their Amended Complaint; one federal racketeering claim and twenty-three state law claims. Defendants move to dismiss the racketeering claim, asserting that Plaintiffs have not sufficiently pleaded it and further aver that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

## II. STANDARD OF REVIEW

Defendants bring their motions pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that Plaintiff has failed to state a claim upon which relief can be granted.

Under the Federal Rules, any pleading that states a claim for relief must contain a "short and plain statement of the claim" showing that the pleader is entitled to such relief. Fed. R. Civ. P. 8(a)(2). To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A claim will be considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(b)(6) allows parties to challenge the sufficiency of a complaint under the foregoing standards. In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept

6

its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

Plaintiffs filed a twenty-four count Amended Complaint alleging: 1) conspiracy to commit racketeering, in violation of 18 U.S.C. §§ 1964, 1962(d), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), (*see* Doc. 10, Am. Compl. ¶¶ 109–120); and 2) numerous state law claims, (*id.* ¶¶ 121–217). Defendants have moved to dismiss Plaintiffs' Amended Complaint arguing that the RICO claim is deficient in multiple respects. Defendants further assert that the Court should decline to assert supplemental jurisdiction over Plaintiffs' remaining state law claims. The Court shall address these arguments in turn.

**A.     Violation of Racketeer Influenced and Corrupt Organizations Act**

While Congress passed the Racketeer Influenced and Corrupt Organizations Act ("RICO") to target organized crime, *see United States v. Turkette*, 452 U.S. 576, 589 n.11 (1981), the Supreme Court has noted that RICO covers racketeering activity committed by legitimate business as well. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 498–99 (1985). Section 1964(c) creates a civil cause of action for "[a]ny person injured in his business or property by reason of a violation

of section 1962 of this chapter." Count I of the Amended Complaint alleges a violation of § 1962(d) of RICO. Section 1962(d) states: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). Plaintiffs allege that Defendants conspired to violate § 1962(c), which provides:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

To state a claim for § 1962(d), a plaintiff must adequately allege all elements of a substantive RICO violation, as well as "the existence of an illicit agreement to violate the substantive RICO provision." *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983); *see also Taborac v. NiSource, Inc.*, No. 2:11-cv-498, 2011 WL 5025214, at *9 (S.D. Ohio Oct. 21, 2011) (Economus, J.). As stated *supra*, Plaintiffs assert Defendants conspired to violate § 1962(c). Thus, here, Plaintiffs must establish two things: 1) the existence of an illicit agreement; 2) to violate § 1962(c). The Court shall address the second element first.

To sufficiently plead a RICO claim under § 1962(c), a plaintiff must plead the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). "Racketeering activity," "pattern of racketeering activity," and "enterprise" are defined under the RICO Act. "Racketeering activity" means any of a number of listed acts or threats that are independently prohibited under state or federal law; including: mail and wire fraud, extortion, theft of trade secrets, interstate transport of stolen property, and receipt of stolen goods. *See* 18 U.S.C. § 1961(1). A "pattern of racketeering activity," in turn, "requires at least two acts of racketeering activity," occurring within

8

specified time limits. *Id*. § 1961(5). And "'enterprise' includes any individual partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.* § 1961(4). A plaintiff's failure to plead any of the elements necessary to establish a RICO violation results in a defective complaint which cannot withstand a motion to dismiss for failure to state a claim. *Cf. Van Dorn Co. Cent. States Can. Co. Div. v. Howington*, 623 F. Supp. 1548 (N.D. Ohio 1985). The Court will first turn its focus on the pattern element of § 1962(c) and then if necessary, address the remaining elements.

### 1. Pattern

In order to establish a RICO claim under § 1962(c), a plaintiff "must allege that the RICO enterprise engaged in a 'pattern of racketeering activity' consisting of at least two predicate acts of racketeering activity occurring within a ten-year period." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006), *cert. denied,* 549 U.S. 1279 (2007) (citing 18 U.S.C. § 1961(5)); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). To establish a pattern, a plaintiff "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original).

Continuity can be either open-ended or closed-ended. *Id.* at 241. "Open-ended continuity exists where there is a distinct threat of long-term racketeering activity or the predicate acts or offenses are a part of the entity's regular way of doing business." *Courser v. Mich. House of Representatives*, 404 F. Supp. 3d 1125, 1153 (W.D. Mich. 2019) (citing *Aces High Coal Sales, Inc. v. Cmty. Bank & Trust of W. Ga.*, 768 F. App'x 446, 456 (6th Cir. 2019). To demonstrate closed-ended continuity, the predicate acts must extend over a "substantial" period of time. *Taborac v. NiSource, Inc.*, No. 2:11-cv-498, 2011 WL 5025214, at *7 (S.D. Ohio Oct. 21, 2011)

(Economus, J.). Under either closed-ended or open-ended theory, "there must be a threat of future criminal conduct." *Courser*, 404 F. Supp. 3d at 1153. And "[i]f the alleged scheme involved a single scheme and a single goal, the continuity requirement is not met." *Id.* (citing *Aces High Coal Sales*, 768 F. App'x at 457).

Each of the Defendants has moved to dismiss Plaintiff's RICO claim against them for failure to state a claim upon which relief can be granted. While Defendants have raised numerous grounds upon which they assert the Amended Complaint is deficient, the Court need not address each argument because, as discussed below, Plaintiffs have failed to sufficiently plead the requisite pattern element. Here, Plaintiffs cannot prevail under either a closed-ended or open-ended theory.

Plaintiffs have not alleged closed-ended continuity as they have alleged only a single 20-month-long scheme with a singular goal: the conversion of Plaintiffs' covetic-related property (including intellectual property). Plaintiffs' attempt to assert that there are three schemes is unpersuasive. Plaintiffs submit that the Amended Complaint "alleges three interrelated schemes, by the same group of Defendants spanning over four years[.]" (Doc. 34, Pl. Opp'n 1 at 17). The facts alleged in the Amended Complaint, however, do not support such an assertion. First, Plaintiffs categorized Defendants' actions as "an ordered, arranged and open-ended, continuous, *scheme*, including related sub-schemes . . . ." (Doc. 10, Am. Compl. ¶ 119). The Court finds that the plain language of Plaintiffs' Amended Complaint, when read in a light most favorable to the Plaintiffs, supports the conclusion that Plaintiffs allege one scheme, not three.

Second, and more importantly, the *facts* asserted in the Amended Complaint similarly show that Plaintiffs allege one scheme not three. The three schemes that Plaintiffs assert exist can be summarized as: 1) the interstate transport of covetic materials; 2) the co-defendants' recruiting of Roger Scherer into the conspiracy to facilitate the conversion of Plaintiffs' covetic-related property

(including intellectual property); and 3) GDCI's contentions that it owned the covetic-related property to others to obtain grants and contracts. (*See* Doc. 34, Pl. Opp'n 1 at 2; Doc. 10, Am. Compl. ¶¶ 63, 65–66, 70, 71–79, 85–87, 90–91, 93–94, 115). These allegations do not constitute three separate schemes; rather they demonstrate three measures that Defendants' allegedly took in preparation[4] of or to further the singular scheme of Defendants' conversion of Plaintiffs' covetic-related property.

Additionally, Plaintiffs have failed to demonstrate that the Defendants' illegal acts spanned a period of nearly four years. The Amended Complaint states that Defendants' alleged illegal activity began on January 21, 2015, when Luedtke allegedly emailed other Defendants to set up the "multi-step concerted conspiracy to convert" TMM's property. (*See* Doc. 10, Am. Compl. ¶ 57). And the final predicate act alleged in the Amended Complaint is Roger Scherer's submission of an alleged false affidavit in the prior state court litigation on September 7, 2016. (*See id.* ¶¶ 105–108). Thus, the period alleged in the Amended Complaint is between 19 and 20 months. The Court finds a period of approximately 20 months insufficient to satisfy the closed period analysis. In reaching this conclusion, the Court is informed by the Sixth Circuit's established precedent that a 17-month period is insufficient to satisfy closed-ended continuity, *see Vemco*, 23 F.3d at 134, as well as the Second Circuit's finding in *First Capital*, which found a

---

[4] Instructive on this matter is the Fifth Circuit's opinion in *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423 (5th Cir. 1987), in which the Fifth Circuit found:

> [A] single robbery of a bank cannot be made into a pattern by pointing to a mailing and a phone call. Rather, such acts are preparatory to the single offense of bank robbery. It is when a first robbery is preceded by discrete illegal acts separate in the sense that they are not simply preparatory acts or a second robbery is accomplished that the possibility of a patter is raised.

*Id.* at 426. Here, many of the acts of mail/wire fraud are simply preparatory measures that Defendants allegedly took to complete the conspiracy's alleged goal: convert Plaintiffs' covetic-related property to the Defendants.

11

period of 24 months to be the minimum amount of time necessary to establish closed-ended continuity, 385 F.3d at 181. Thus, based on the foregoing, Plaintiffs have failed to demonstrate closed-ended continuity.

Plaintiffs have likewise failed to establish open-ended continuity. In determining whether a plaintiff has demonstrated open-ended continuity, the Sixth Circuit's decision in *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101 (6th Cir. 1995), is instructive. *See Aces High Coal Sales, Inc. v. Cmty. Trust & Bank of W. Ga.*, No. 15-161, 2017 WL 3122661, at * 9 (E.D. Ky. July 21, 2017) (stating that "the other [*Columbia*] factors bearing on continuity" apart from length of time "affect only the open-ended analysis."). In *Columbia*, the Sixth Circuit explained:

> [T]o state the inquiry simply, a pattern is the sum of various factors including: the length of time the racketeering activity existed; the number of different schemes (the more the better); the number of predicate acts within each scheme (the more the better); the variety of species of predicate acts (the more the better); the distinct types of injury (the more the better); the number of victims (the more the better); the number of perpetrators (the less the better).

*Columbia*, 58 F.3d at 1110.

As explained above, Plaintiffs alleged only one scheme with one distinct type of injury, thus the first and fourth factor weigh in favor of Defendants. Assuming *arguendo* that Plaintiffs have sufficiently pleaded the predicate acts,[5] Plaintiffs have alleged a substantial number of predicate acts; as such, the second factors weighs in Plaintiffs' favor. Likewise, Plaintiffs have alleged a substantial number of entities were victimized by Defendants' alleged acts, including: both Plaintiffs, various governmental agencies, and potential/current customers. The remaining factors, however, cut in Defendants' favor. Plaintiffs essentially complain of four varieties of predicate acts: fraud; extortion; theft of trades secrets; and transport of stolen property. Given the

---

[5] Because the Court finds that Plaintiffs have failed to establish the pattern of racketeering element, the Court declines to analyze whether Plaintiffs have pleaded each predicate act in compliance with the Federal Rules of Civil Procedure.

12

specific facts of the case at bar, the Court concludes this factor to weigh slightly in Defendants' favor as the theft and trade secret predicates and transport of stolen property ones are inextricably intertwined given that the transported stolen property are the trade secrets that Defendants allegedly misappropriated. Finally, Plaintiffs assert that all named Defendants, collectively 12 individuals and entities, and Stephanie Scherer participated in this scheme.

Most importantly, the Court finds it informative that Plaintiffs assert that there is a plausible threat that Defendants will continue to engage in this behavior, yet the Amended Complaint is devoid of any allegations that Defendants have engaged in any racketeering activity since September 2016. Plaintiffs commenced their action in this Court in January 2019; surely, if the there was a plausible threat of continued activity, Defendants would have continued to engage in such activity during the approximately 30-month period of time between September 2016 and January 2019. As such, looking at the totality of the circumstances, the Court concludes that Plaintiffs have not sufficiently demonstrated open-ended continuity. Establishing a threat of continued criminal activity is a requirement of pattern, a necessary element to plead a RICO claim under § 1962(c). Plaintiffs have failed to establish this continuity and therefore have not satisfied the pattern requirement. Accordingly, as Plaintiffs have failed to allege a substantive RICO claim under § 1962(c), their RICO conspiracy claim is hereby dismissed.

**B.     Plaintiffs' State Law Claims**

This Court's jurisdiction over the case at bar was predicated upon 28 U.S.C. § 1331, as Plaintiffs alleged a federal RICO claim. Having dismissed Plaintiffs' sole federal claim, the Court declines to assert supplemental jurisdiction over the remaining state law claims.

## IV. CONCLUSION

For the reasons stated herein, all of Defendants' Motions to Dismiss are **GRANTED**. The Clerk is **DIRECTED** to remove Documents 19, 20, 27, 31, and 32 from the pending motions list and enter judgment in favor of Defendants.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**